UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*CLAUDE A. STATEN*

*176 Linden Avenue*

*middleTown N.Y. 10940*

_(In the space above enter the full name(s) of the plaintiff(s).)_

RECEIVED
SDNY PRO SE OFFICE

2016 JUL -1 PM 12: 10

S.D. OF N.Y.

# 16CV 5316

-against-

*The PaTrolmen's Benevolent Association*

*125 Broad STreeT, 11th Floor*

*New York, N.Y. 10004*

_(In the space above enter the full name(s) of the defendant(s)._
_If you cannot fit the names of all of the defendants in the space_
_provided, please write "see attached" in the space above and_
_attach an additional sheet of paper with the full list of names._
_Typically, the company or organization named in your charge_
_to the Equal Employment Opportunity Commission should be_
_named as a defendant.  Addresses should not be included here.)_

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  ☑ Yes  ☐ No

_(check one)_

RECEIVED 2016 JUN 29 P 10: 51 U S DISTRICT COURT SDNY

This action is brought for discrimination in employment pursuant to: _(check only those that apply)_

✓  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
_**NOTE:** In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission._

_____  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
_**NOTE:** In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission._

_____  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
_**NOTE:** In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission._

✓  New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

✓  New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

## I.      Parties in this complaint:

A.      List your name, address and telephone number.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff      Name _CLAUDE A. STATEN_

Street Address _176 Linden Avenue_

County, City _ORANGE, MiddleTown_

State & Zip Code _New York 10940_

Telephone Number _(845) 559-4481_

B.      List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant      Name _The PaTrolmen's Benevolent Association_

Street Address _125 Broad STreeT, 11th Floor_

County, City _ManhaTTan, N.Y._

State & Zip Code _N.Y.  10004_

Telephone Number _(212) 233-5531_

C.      The address at which I sought employment or was employed by the defendant(s) is:

Employer _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____

## II.      Statement of Claim:

State as briefly as possible the facts of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

_____      Failure to hire me.

_____      Termination of my employment.

_____      Failure to promote me.

_____      Failure to accommodate my disability.

_____      Unequal terms and conditions of my employment.

—✓—   Retaliation.

—✓—   Other acts (specify): _Harassment, Hostile work environment_

**Note:**   Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.

B.   It is my best recollection that the alleged discriminatory acts occurred on: _March 07, 2016_ _June 27, 2016_

                                                                                                _Date(s)_

C.   I believe that defendant(s) (check one):

—✓—   is still committing these acts against me.

———   is not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my (check only those that apply and explain):

☑   race   _Hispanic_                          ☑   color   _Black_

☐   gender/sex   _____                    ☐   religion_____

☐   national origin _____

☑   age.   My date of birth is _MAY 03, 1965_   (Give your date of birth only
            if you are asserting a claim of age discrimination.)

☐   disability or perceived disability, _____ (specify)

E.   The facts of my case are as follow (attach additional sheets as necessary):

_Enclosed are paragraphs 9 Through 108 under Title_
_II. STATEment of Claim: including Summary_

_____

_____

_____

_____

_____

**Note:**   As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.

## III.   Exhaustion of Federal Administrative Remedies:

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: _March 31, 2016_                                                       (Date).

B.  The Equal Employment Opportunity Commission *(check one)*:

_____  has not issued a Notice of Right to Sue letter.

____✓____  issued a Notice of Right to Sue letter, which I received on *march 31, 2016*(Date).

> *Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.  Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

____✓____  60 days or more have elapsed.

_____  less than 60 days have elapsed.

## IV.  Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: *Compensatory and punitive damages in the amount of 10,000,000 for harassment and hostile work environment created by union.*

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this *29* day of *June*, 20 *16*

Signature of Plaintiff *Claude A. [signature]*

Address *CLAUDE A. STATEN*
*176 Linden Avenue*
*Middletown N.Y. 10940*

Telephone Number *(845) 559-4481*

Fax Number *(if you have one)* _____



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

**1. Personal Information**
Last Name: _STATEN_   First Name: _CLAUDE_   MI: _ANThony_
Street or Mailing Address: _176 Linden Avenue_   Apt Or Unit #: _Private house_
City: _MiddleTown_   County: _Orange_   State: _N.Y._   ZIP: _10940_
Phone Numbers: Home: _(845) 794-0617_   Work: _(718) 220-5211_
Cell: _(845) 559-4481_   Email Address: _CLAUDIEBOY65@YAHOO.com_
Date of Birth: _5/03/65_   Sex: Male ☑ Female ☐   Do You Have a Disability? ☐ Yes ☐ No
**Please answer each of the next three questions.**   i. Are you Hispanic or Latino? ☑ Yes ☐ No
ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaska Native   ☐ Asian   ☐ White
☑ Black or African American   ☐ Native Hawaiian or Other Pacific Islander
iii. What is your National Origin (country of origin or ancestry)? _PANAMA_

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**
Name: _Sherrill Pressley_   Relationship: _Common law wife_
Address: _33 Haddock Road_ City: _Monticello_   State: _N.Y._ Zip Code: _12701_
Home Phone: _(845) 794-0617_ Other Phone: _(845) 901-6673_

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)
☑ Employer   ☑ Union   ☐ Employment Agency   ☑ Other (Please Specify) _Supervisors at work_

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**
Organization Name: _New York City Police Department / Also N.Y.P.D PBA_
Address: _2120 Ryer Avenue 046 Pct._   County: _Bronx_
City: _Bronx_   State: _N.Y._ Zip: _10457_   Phone: _(718) 220-5211_
Type of Business: _Police Department_ Job Location if different from Org. Address: _One Police Plaza N.Y. N.Y. 10038_
Human Resources Director or Owner Name: _N/A_   Phone: _____
Number of Employees in the Organization at All Locations: Please Check (√) One
☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☐ 201 - 500   ☑ More than 500

**3. Your Employment Data** (Complete as many items as you can)   Are you a Federal Employee? ☐ Yes ☑ No
Date Hired: _July 15, 1986_   Job Title At Hire: _Police Officer_
Pay Rate When Hired: _26,000 Annually_   Last or Current Pay Rate: _115,000 Annually_
Job Title at Time of Alleged Discrimination: _Police Officer_   Date Quit/Discharged: _N/A_
Name and Title of Immediate Supervisor: _Sergeant Joseph Doria_

2

**If Job Applicant,** Date You Applied for Job _12/11/14_   Job Title Applied For _Lieutenant_

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☑ Race   ☐ Sex   ☑ Age   ☐ Disability   ☐ National Origin   ☐ Religion   ☑ Retaliation   ☐ Pregnancy   ☑ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _Black Hispanic Panamanian_

If you checked genetic information, how did the employer obtain the genetic information? _N/A_

Other reason (basis) for discrimination (Explain). _Refusal of right to take promotion exam_

**5. What happened to you that you believe was discriminatory?**  Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.  Please attach additional pages if needed.

*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: _April 18, 2015_   Action: _Promotional exam for rank of Lieutenant denied admission to exam site exam number #5521_

Name and Title of Person(s) Responsible: _N.Y.C, DCAS Stacey Cumberbatch commissioner_

B) Date: _January 02, 2016_   Action: _Hostile work Environment, harassment_

Name and Title of Person(s) Responsible: _Lieutenant Gabriel Healy Platoon Commander_
_Sergeant Joseph Doria squad sergeant and witness to action._

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

**7. What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| _Joseph Doria_ | _Caucasian male_ | _NYPD sergeant_ |
| Description of Treatment _unequal Terms and conditions._ | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| _Cheryl Shea_ | _Caucasian female_ | _nypd sergeant_ |
| Description of Treatment _unequal Terms and conditions_ | | |

3

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title _Detective_ |
|---|---|---|
| _Lucy Rosa_ | Hispanic _Female 5, 911 related illness_ | |
| Description of Treatment _became sick due to illness related to 9/11 world trade center incident_ _s a result on sick report for three years due to illness and was forced to retire but steven_ _a male Caucasian or_ | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title _Police officer_ |
|---|---|---|
| _Cory Carr_ | Black male _was_ | |
| Description of Treatment _was placed on a shooting post a dangerous location within the 46th precinct_ _where a single was shot. Cory who was placed on this post two days in a row and was_ _suspended on the second day for refusing to take this dangerous post._ | | |

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title _Police officer_ |
|---|---|---|
| _Ceser Gomez_ | _Hispanic male_ | |
| Description of Treatment _failure to promote on sgt exam list_ | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| Description of Treatment | | |

**Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.**

9.  **Please check all that apply:**
    ☐  Yes, I have a disability
    ☐  I do not have a disability now but I did have one
    ☐  No disability but the organization treats me as if I am disabled

10. **What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

11. **Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
    **Yes** ☐    **No** ☐
    If "Yes," what medication, medical equipment or other assistance do you use?

12. **Did you ask your employer for any changes or assistance to do your job because of your disability?**
    **Yes** ☐    **No** ☐
    If "YES", when did you ask? _____    How did you ask (verbally or in writing)? _____
    Who did you ask? (Provide full name and job title of person)

    Describe the changes or assistance that you asked for:

    How did your employer respond to your request?

4

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| A. Full Name | Job Title 046 Precinct Integrity Control Sergeant N.Y.P.D. | Address & Phone Number 046 Precinct 2120 Ryer Avenue |
|---|---|---|
| Jose Feliciano | | (917) 204-6987   Bronx N.Y. 10457 |

What do you believe this person will tell us? He being my former squad sergeant, and current integrity Control sergeant of the 046 precinct. He has witnessed the Treatment That I have suffered within The 046 precinct, and by The police department as well.

| B. Full Name | Job Title N.Y.P.D. Police Officer | Address & Phone Number 046 Precinct 2120 Ryer Avenue |
|---|---|---|
| Dino Davila | | (914) 541-0097   Bronx N.Y. 10457 |

What do you believe this person will tell us? He Too being a victim of race discrimination within The 046 precinct, and a witness To The Treatment directed Towards me. Within The 046 precinct, and by The N.Y.P.D. as well.

**14. Have you filed a charge previously in this matter with EEOC or another agency?**     Yes ☑ No ☐

**15. If you have filed a complaint with another agency, provide name of agency and date of filing:**
N/A

**16. Have you sought help about this situation from a union, an attorney, or any other source?**     Yes ☑ No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2 ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that **the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.** I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____     June 29, 2016
**Signature**                          **Today's Date**

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.
Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

Print Form



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Claude Staten
176 Linden Avenue
Middletown, NY 10940

Re:   EEOC Charge No. 520-2015-02112
        Claude Staten v. New York City Police Department

Dear Mr. Staten:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission")
has reviewed the above-referenced charge according to our charge prioritization procedures.
These procedures, which are based on a reallocation of the Commission's staff resources,
apply to all open charges in our inventory and call for us to focus our limited resources on those
cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined your charge based upon the
information and evidence you submitted.  You allege you were discriminated against because of
your race (Black), National Origin (Panama) Age (DOB: 5-3-1965) and subjected to Retaliation
and, issues of terms and conditions of employment and promotion.

Respondent's position statement has been previously shared with you. Your rebuttal to this
position statement has been received and analyzed.  Based upon this analysis the Commission
is unable to conclude that the information establishes a violation of Federal law on the part of
Respondent.  This does not certify that Respondent is in compliance with the statutes.  No
finding is made as to any other issue that might be construed as having been raised by this
charge.

The Commission's processing of this charge has been concluded. Included with this letter is
your Notice of Dismissal and Right to Sue.  Following this dismissal, you may only pursue this
matter by filing suit against the Respondent named in the charge within 90 days of receipt of
said notice.  Otherwise, your right to sue will be lost.

Please contact Roxanne Zygmund, Investigator at 212-336-3764 if you have any questions.

Sincerely,

*Roxanne Zygmund* for

Kevin J. Berry
District Director

MAR 3 1 2016
_____
Date

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Claude Staten | From: | New York District Office |
|---|---|---|---|
| | 176 Linden Avenue | | 33 Whitehall Street |
| | Middletown, NY 10940 | | 5th Floor |
| | | | New York, NY 10004 |

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| | Roxanne Zygmund, | | |
| 520-2015-02112 | Investigator | | (212) 336-3764 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Kevin J. Berry* (signature)

MAR 3 1 2016

**Kevin J. Berry,**
**District Director**

*(Date Mailed)*

Enclosures(s)

cc:  Eileen Flaherty, Esq.
The City of New York Police Department
One Police Plaza, Room 1406
New York, NY 10038

## Introduction

1. This is an action for equitable relief, money damages, and promotion to proper rank. On behalf of the plaintiff Claude A. Staten (here in after referred to as the "plaintiff"). Who was, and who is prospectively being deprived of his civil, and constitutional rights, as a result of the defendant, delegates of the defendant, their agents, and co-defendant—The City of New York. The Patrolmen's Benevolent Association was involved in creating a hostile work environment, retaliation, harassment and unequal terms and conditions for I the plaintiff compared to other members of the Union. These members are also employed by the co-defendant regarding treatment, representation, and legal defense.

## Jurisdiction and Venue

2. The jurisdiction of this court is invoked pursuant to U.S.C. § 1965, 18 U.S.C. § 1343, 28 U.S.C. § § 1331, 1343, and 2002 to secure protection of and to redress deprivation rights secured by

    a. The Civil Rights Act of 1866, 42 U.S.C. § 1981, providing for the protection of a person's rights to make and enforce contracts under the color of state law; and

    b. The Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in their civil rights and the redress of deprivation under color of law.

3. The unlawful practices, violations of plaintiff's civil rights complained of herein were committed within the Southern District of New York.

4. The pendent jurisdiction of The Federal District Court is invoked with respect to the plaintiff's claims under New York State Law § 296 because the entire action before the court compromises one constitutional and civil rights case, and the claims arise out of the

same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

Plaintiff

5.  Plaintiff is a male citizen of the United States of America, and is over twenty-one (21) yeas of age, a resident of Orange County N.Y., and is an employee of defendant. The City of New York (herein after referred to as the "City") more specifically The New York State Police Department (herein after referred to as the "NYPD"). For the purposes of this litigation, the Defendant City may be identified interchangeably using City or NYPD to identify the employer, which is the city.

Defendant

6.  Defendant City was and is a municipal corporation organized, and existing under, and by virtue of the law of the State of New York, and at all relevant times was plaintiff's employer, with its central offices in the County of New York, and diverse other offices and facilities throughout the world.

Procedural Requirements

7.  Plaintiff has filed suit with this court within the applicable statute of limitations period.

8.  Plaintiff had filed a complaint with the Equal Employment Opportunity Commission regarding matters listed in this complaint.

Background

9.  Plaintiff is a black Hispanic male Police Officer, employed by Defendant City within the NYPD.

Hostile Work Environment

10. June 05, 2008 Police Officer James Lisa, a Caucasian male, and at the time a Patrolmen's

Benevolent Association delegate, was assigned to the 046 precinct. Police Officer James Lisa did enter, I the plaintiff's, department locker without my permission and removed the agency copies of two traffic summons. Leaving the remaining copies of the summons along with a note he wrote inside, I the plaintiff's, uniform hat which was located inside my department locker.

Exhibit M

11. I the plaintiff's locker was locked and secured, so force was used to gain entry into my locker, which is a penal law felony.

12. The reason the agency copies of the summons were in my locker was to secure them until my next tour, so I would be able to rewrite the officer's copy of the summons in order to make the copies legible for future court testimony.

13. For this reason I was unable to place my written summons in the summons box at the end of my tour.

14. Police Officer James Lisa was unable to locate my written summons in the summon box. He entered into my department locker, without permission or authority, by force. With the intent to seize the agency copies of my summons and stop the processing of them.

15. Police Officer James Lisa committed several crimes during the commission of this act, but was not charged criminally or departmentally for them.

16. But I the plaintiff, whom was a victim of a crime, was further victimized by both the defendant and the co-defendant. In that I was charged departmentally for failing to put my traffic summons in the summon box at the end of my tour.

17. I the plaintiff, was also charged departmentally for failing to secure my department locker, which was already locked and secured.

18. I the plaintiff, have been attacked for a design flaw in property owned by the New York City Police Department. That property being my department assigned locker.

19. All of the lockers with the same style and design as my locker, which are most of the lockers within the senior locker room, have the same flaw as the plaintiff's.

20. During the course of the investigation for the burglary of I the plaintiff's locker, conducted by the NYPD Crime Scene Unit, it was stated, "Examination of the lock and locker door revealed that the lock was in good working order, however, the locker door with the lock securely attached can be forced open by pulling hard from the top portion of the locker door."

21. Other than attaching and securing my lock to the locker latch and locking it, how else could I have secured my locker to prevent unauthorized entry?

    Exhibit H

22. The investigation proves the condition and state of my department locker, explaining how the locker can be entered and the door opened circumventing the lock.

23. During the course of this investigation I the plaintiff's locker was found not to be defective. Even though these facts have been revealed and proven the department has not only attacked I the plaintiff, but has penalized me as a result of wrongdoing by other members of this department.

    Exhibit N

## Retaliation

24. I the plaintiff have been punished excessively and harshly for acts that the defendant was aware that other members of the police department were responsible for.

25. As a result, I the plaintiff received department charges for these acts, and the persons

responsible for the criminal acts received no department penalties or criminal charges for the crimes committed by them.

26. I the plaintiff believe that this is due to more than just retaliation against me, but hatred towards me fueled by racism.

27. May 20, 2010 10:00 a.m. I arrived at 40 Fulton St. New York which is the PBA office. I spoke to Police Officer Gregory Manning, who was at the time the PBA treasurer, but was the 046 precinct PBA delegate for many years prior. I spoke with Manning in regards to me not receiving my PBA cards. He told I the plaintiff that because I spoke to the Internal Affairs Bureau regarding James Lisa breaking into my locker, I would not be receiving my PBA cards.

28. For years 2009-2012 I the plaintiff did not receive PBA cards from the PBA although I was a member of the Union and was paying my PBA dues.

29. The PBA delegates from the 046 precinct told I the plaintiff, as other members in the 046 precinct were receiving their PBA cards, that I had to speak to Officer Gregory Manning as he was responsible for me not receiving my PBA cards.

30. On February 19, 2006 while I the plaintiff was entering the 046 precinct locker room I did hear Police Officer Gregory manning refer to me as a nigger while he was speaking to his then patrol partner Police Officer Kevin Williams.

31. Police Officer Gregory Manning has displayed to I the plaintiff that he is clearly a racist. Since he was a PBA delegate he was able to use his position to prevent I the plaintiff from receiving protection from the police union as well as well as attack I the plaintiff.

32. In or around 2006, I the plaintiff called the PBA office on many occasions trying to receive relief from the attacks I was suffering at the hands of both Police Officer Gregory Manning

and, at the time the Commanding Officer of the 046 precinct, Kevin Harrington.

33. I also called the NYPD's OEEO to also try to obtain relief from the attacks I suffered at the hands of Police Officer Gregory Manning and Commanding Officer Kevin Harrington.

34. On March 20, 2007 I called the PBA office during business hours to complain about Police Officer Gregory Manning. I the plaintiff was connected to the voicemail of the PBA Trustee Joe Anthony.

35. On March 23, 2007 PBA Trustee Joe Anthony returned my call and I spoke with him about the problems I was having with Police Officer Gregory Manning

36. On April 03, 2007 2:48 p.m. I spoke with Joe Anthony, again trying to receive relief from the problems I was suffering from both Police Officer Gregory Manning and Deputy Inspector Kevin Harrington.

37. On May 11, 2007 11:15 p.m. I spoke with Scott Williamson of the PBA in the 046 precinct's muster room in regards to the problems I was having with Police Officer Gregory Manning, Commanding Officer Kevin Harrington, and others within the department.

38. I the plaintiff called the OEEO on August 22, 2006 for the first time at 5:15 p.m. I spoke with Sergeant Simmons of OEEO regarding the problems I was having with both Police Officer Gregory Manning and Commanding Officer Kevin Harrington.

39. August 22, 2006 6:15 p.m. Detective Grier from OEEO returned my call. I the plaintiff explained how during the week of February 16, 2006 Police Officer Gregory Manning called me a nigger in the 046 precinct locker room.

40. Detective Grier from OEEO told I the plaintiff, "So! You should have called then. It is too late to do anything about it now."

41. March 20, 2007 11:20 a.m. I the plaintiff called OEEO and spoke with Detective Grier in

order to make an appointment to appear at OEEO to file a complaint against Commanding

Officer Kevin Harrington and Police Officer Gregory Manning.

42. I had reason to believe Commanding Officer Kevin Harrington was putting forth efforts to

stop my career advancement. Detective Grier asked I the Plaintiff if I was on a promotional

list. I the plaintiff replied, "No." Detective Grier then responded, "How is Commanding

Officer Harrington trying to stop your career advancement?"

43. I explained to Detective Grier that I was studying for future promotional exams and I was

concerned that what Commanding Officer Kevin Harrington was doing would harm my

career advancement.

44. On March 30, 2007 I the plaintiff called OEEO in regards to my complaint and was told

that I have to speak to Detective Grier on Monday since she was not in on that day.

45. April 02, 20017 4:45 p.m. I the plaintiff, call O.E.E.O. and asked to speak to Detective

Grier. I was told she was in the restroom. Detective Grier called back at 1650 hours (4:50

P.M.) and said she would give me a date that I could appear at O.E.E.O.

46. April 02, 2007 1805 hours (6:06 P.M.) Detective Grier from O.E.E.O. called me back, and

said that, I the plaintiff, would be notified by my precinct Integrity Control Officer to

appear at O.E.E.O. on April 18, 2007.

47. April 17, 2007, I the plaintiff, called O.E.E.O. and spoke to Detective Grier in regards to

my appointment April 18, 2007, and that I never received a notification to appear at

O.E.E.O. Detective Grier told me my appointment would be changed to April 20, 2007

48. I the plaintiff, never received notification to appear at O.E.E.O. to file a complaint.

Although, I the plaintiff, called O.E.E.O.no fewer than five different dates over a period of

eight months, but I the plaintiff, however, did receive departmental charges on April 20,

2007. Once departmental charges are filed, a member of the department cannot file an

O.E.E.O. complaint, or be promoted with open departmental charged. Exhibit O

49. My first call to O.E.E.O. being August 22, 2006 and my last call to O.E.E.O. April 17,

2007. I the plaintiff, never received a written notification to appear at O.E.E.O. despite the

repeated request by myself to appear in order to file my complaint.

50. In no way, shape or form did O.E.E.O. or the P.B.A. make any efforts to prevent further

attacks, I the plaintiff, suffered by the Police Department. But instead also attacked, I the

plaintiff, in conjunction with other members of the Police Department as retaliation, for I

the plaintiff, trying to file an O.E.E.O. complaint.

51. I the plaintiff, did exhaust all efforts to obtain relief in regards to this manner, within the

Police Department with no success. I have reached out to the N.Y.P.D. O.E.E.O., and the

P.B.A.

52. The 046 precinct where, I the plaintiff have been assigned for the last twenty three years,

is without a doubt the most openly racist precinct that I have ever worked to date.

53. Where not only myself as the plaintiff in this action, has been a victim of racism, but I have

witnessed other, mostly black and Hispanic, employees assigned to the 046 precinct, who

have also been victims of racism as well, to date. Captain Keith Walton had been a victim

of race discrimination, unequal terms and conditions of unemployment and hostile work

environment. Police Officer Dino Davila has also been a victim of race discrimination.

54. The reason I the plaintiff, explained the racism within the 046 precinct in this fashion, is

because even Caucasian employees suffered attacks of racism at the 046 precinct, to date.

55. Assignments such as prisoner transport or cell attendant

56. Instead the positive assignment or position would be given to a different Caucasian Police

Officer.

57. Although the Jewish Police Officer would have possess the same, or sometimes even greater qualification, for that assignment or position.

58. January 17, 2000 day of the week Monday, Sergeant Frank Carregan conducted roll call and assigned Gregory Manning, as 046 precinct cell attendant

59. Police Officer Gregory Manning, a Caucasian male, protested Frank Carregan, a Caucasian male, about his assignment, and had his assignment changed to patrol, and I the plaintiff was given Police Officer Gregory Manning's, original assignment as cell attendant. Although, I the plaintiff, had more seniority than Police Officer Manning.

60. January 17, 2000, I the plaintiff, reassigned to the 046 precinct cell attendant, which was also Dr. Martin Luther King's birthday. AT approximately 0700 hours (7:00 A.M.) I approached the command desk where Sergeant Frank Carregan was assigned. As the Desk Officer, for the 2315 x 0750 tour (11:15 P.M. to 7:50 A.M.) Police Officer John McGlocklin, A Caucasian male, which was also present behind the Command Desk.

61. Police Officer John McGlocklin stated to, I the plaintiff, that today was Martin Luther King's birthday, and he wanted to know whether the black prisoners were in the cells singing negro spirituals or not. Both he and Sergeant Corregan laughed in front of me, as, I the plaintiff, did not find this funny, and I was offended by this statement.

<u>Race Discrimination and Unequal terms and Conditions</u>

<u>Eugene Donnelly</u>

62. Police Officer Eugene Donnelly (a male Caucasian), while assigned to the 046 precinct. During such time, while Police Officer Eugene Donnelly was off duty, but still within the

confines of the 046 precinct. Police Officer Eugene Donnelly did take Police action, drawing his firearm, and did shoot a male as a result of his actions taken.

63. Police Officer Eugene Donnelly on June 10, 2014 was issued a medal and award, for his actions taken, during the shooting incident in the confines of the 046 precinct. By both the Police Commissioner and the Mayor.

64. Police Officer Eugene Donnelly is the third, Caucasian Police Officer to have been involved in a Police related shooting in the confines of the 046 precinct, and received medals and awards issued to them by both the Police commissioner and the mayor.

65. During both, I the plaintiff's, shooting incidents, which also occurred in the confines of the 046 precinct in 1996 and 2000, I the plaintiff, was working in the uniform and on duty. Taking Police action and having to fire my handgun as a result. I the plaintiff, (Police Officer Claude A. Staten) fought for my life, during both of my shooting incidents.

66. The perpetrators were arrested, tried, and convicted, and sentenced to both jail and prison term. My acts of bravery and heroics have gone unrecognized by this department and its members. Whereas, I the plaintiff, have received no medals or awards for my acts of bravery, unlike my Caucasian counterparts.

67. The only entities that acknowledged my acts of bravery and heroics where the Bronx district attorney's office for my 1996 shooting incident and the Honor Legion for my 2000 shooting incident

<u>Exhibit F</u>

<u>Exhibit G</u>

Despite, I the plaintiff, having submitting no fewer than four request for department

recognition. Two for each shooting incident.

68. As well as, I the plaintiff, not receiving any special assignments such as my Caucasian
counterparts, after their police related shootings. Former Police Officer, now Detective
Mathew Costello, now assigned to the 046 precinct detective squad.

69. Police Officer Keneith Thompson, assigned as the 046 precinct property specialist. Police
Officer Eugene Donnelly transferred to a specialized unit after his shooting incident. All
three above listed Officers were assigned to the 046 precinct during their Police related
shooting in the confines of the 046 precinct.

70. All three above listed Officers received medals and awards issued to the by both the
Police Commissioner and the Mayor for their Police related shooting incidents. All three
above listed Officers are Caucasian Males. I the plaintiff, who is a black hispanic male
have not been treated the same as my Caucasian counterparts, due to what I believe to be
my color and my race.

71.  Police officer Eugene Donnelly was formerly assigned to the 046 precinct. He was
awarded a medal issued to him by both the Police Commissioner and the Mayor, at an
award ceremony held at a Police Headquarters, for a Police related shooting, while Police
Officer Eugene Donnelly was in fact off duty.

72. I Police officer Claude A. Staten have been involved in two separate police related
shootings while on duty, but unlike Eugene Donnelly, I Claude A. Staten received no
department recognition, for what I feel to be both my color and my race. As I am black
Hispanic, and have certainly been treated differently, and far less favorably than Police
Officer Eugene Donnelly who is a male Caucasian.

73. On May 21, 2016 at 0430 hours (4; 30 a.m.) while I police officer Claude A. Staten  was

preforming my regularly schedule tour, I did witness Police Officer Eugene Donnelly

informed the desk officer, that he had to retrieve something from his department locker.

On May 22, 2016 Police Officer Eugene Donnelly was arrested again, for driving while

intoxicated after striking three parked cars, and turning the vehicle he was driving on its side.

Exhibit 3L1

Retaliation and Hostile Work Environment

Barrier Section

74. I the plaintiff, have been assigned to the barrier section no fewer than twice per month

since September 2014. The date assigned to the other barrier sections are as follows:

(/05/14, 9/18/14, 10/06/14, 10/14/14, 11/03/14, and 11/11/14.

Exhibit ZB

75. I the Plaintiff, have been barrier truck qualified for more than twenty-five years, but when

I am assigned to the barrier section, most of the time I am not driving the truck. So my

assignment requires, I the plaintiff, to do a great deal of heavy lifting. In that hundreds of

barriers are required to be lifted off and on to the barrier trucks.

76. I the plaintiff, believe the reason I am being ordered to do this assignment so often, is a

form of retaliation against me. In that I am made to work excessively hard. Also to

inconvenience, I the plaintiff, in a way of the commute both to and from the barrier

section for the tours assigned.

77. The barrier section is in Long Island City, Queens New York, forcing, I the plaintiff, to

either travel through an additional borough, or pay a costly toll, creating more travel time and expense, as, I the plaintiff, reside in upstate New York.

78. The defendant has also created a hostile work environment for, I the plaintiff, in that there is an increased risk of injury, by not only the extreme heavy lifting and the moving of barriers. But that fact that, I the plaintiff, am assigned to work on public streets of New York City. Although not in uniform, I am assigned a marked police vehicle without a department radio in the event of an emergency. Putting, I the plaintiff's, personal safety further at risk.

79. The P.B.A. is unable to help me with my failure to promote claims. As I Claude A. Staten have passed no fewer than three promotional exams for the rank of N.Y.P.D. Sergeant, and have not promoted once. For Exam number 8564 given in 2009 and Exam number 1533 given in 2011. I Claude A. Staten was the victim of the N.Y.P.D.'s 1 and 3 rule for both promotional exams in a row. Which is a clear case of employment discrimination of failure to promote, for which the union is aware of.

80. Sergeant Cronin assigned to the barrier section currently was once a Police Officer also assigned to the 046 precinct and that is how he is known to I the plaintiff.

81. About March 7th, 2016 while I Police Officer Claude A Staten was assigned to work the barrier section, Sergeant Cronin approached me and said, "Hey Claude how are you doing? I heard you were on the list to make boss. What happened?" I replied, "The department has refused to promote me from multiple lists." Sergeant Cronin stated to me Police Officer Claude A. Staten, "You know what you have to do. You're going to have to get yourself a lawyer, and spend some more money." Showing and proving that my employment discrimination is known even outside my command the 046 precinct, and I

am forced to deal with the effects of this treatments on regular basis.

82. Police Officer John Rudden is now assigned to the barrier section, and may very well be aware of the employment discrimination and that I the Plaintiff am suffering there.

83. My normal tour ends at 0750 hours (7:50 a.m.), but the tours I have been ordered to work for the barrier section have extended into my days off, after my work week has been completed. Not as a service or a benefit for me, but instead as a hostile and malicious attack, against I the plaintiff. .

84. On June 27, 2016 I just completed a midnight tour, but if I were to go home I can only remain there, not more than four hours before I have to appear at the barrier section in long Island City, located in Queens, New York. Which is more than a two hour drive from my home in Orange County, New York.

85. My command, the 046 precinct, does not have any dorms or any facilities to sleep in. So during the normal hours that I sleep, when I am off duty, I am unable to do so comfortably, while having to wait, for my next ordered tour to begin at 1500 hours (3:30 p.m.) and not scheduled to end until 2335 hours (11:35 p.m.). Meaning I would not return home until after 0100 hours (1:00 a.m.).

86. As a result, I am placed in a dangerous position, with the threat of falling asleep behind the wheel while driving home, due to fatigue, because of the type of work that I have been forced to perform, and the number of hours being forced to work straight with sleep deprivation.

87. Enclosed are two department documents notification for the barrier section, and the truck assignment sheet from the barrier section.

Exhibit 3L3

88. I Police Officer Claude A. Staten have been advised by the 046 precinct rollcall personnel that the Patrol Boro Bronx personnel is calling them and is requesting me personally by name, in order to force me, to repeatedly perform the barrier section assignment, an unfavorable assignment. Which is very hard work, in terms of physical demand, and is made more difficult, for I the plaintiff, by members assigned to the Barrier section, for the reasons stated.

89. On June 27, 2016, the date of the assignment, I am aware of at least eight trucks dispatched on the 4x12 tour, 1500 hours x 2335 hours (3:00 p.m. – 11:35 p.m.) Four of which certainly was equipped with air conditioning units, that were working but truck number 9853 that I Police Officer Claude A. Staten was assigned, was not equipped with a working air conditioning unit.

> Exhibit 3L4

90. The temperature during the 4x12 tour exceeded 82 degrees. Truck number 9878 was assigned to and driven by Police Officer Richard Valdez from the 046 precinct, and was equipped with a working air conditioning unit. Also regarding the eight trucks assigned, six of them had five workers assigned, with the exception of the truck assigned to I Claude A. Staten, which had a team of only four workers.

91. I Claude A. Staten was responsible for loading and unloading, as well as driving the truck, causing me to exit the truck during each stop where barriers needed to be picked up. Because none of the workers assigned to my truck had knowledge of stacking the barriers. As a result my work load was made more difficult. The first load for the truck I was assigned to for barrier section was 80 metal barriers. The second load consisted of another

80 metal barriers. The third load consisted of another 40 metal barriers. All of which had to be loaded and unloaded onto and off of the truck.

92. I Police Officer Claude A. Staten have been qualified to operate the barrier trucks for more than twenty eight years, making me amongst the most senior drivers for the department, if not the most senior driver. But the treatment I have received does not reflect this. As I am highly disrespected and mistreated by the members of this department as well as the city. Enclosed is a chart of the trucks assigned on June 27, 2016 for the 4x12 tour, 1500 hours x 2335 hours (3:00 p.m. – 11:35 p.m.).

93. The following is a chart of the trucks dispatched on the above listed date for the barrier section 4x12 tour. The first listed is the truck I the plaintiff was assigned to.

| Trucks | Number of Workers Assigned |
|--------|----------------------------|
| 9853 | 4 (Claude A. Staten) |
| 9869 | 5 |
| 9861 | 5 |
| 9875 | 5 |
| 9878 | 4 (Included A/C) (Richard Valdez) |
| 9870 | 5 (Included A/C) |
| 9876 | 5 (Included A/C) |
| 9893 | 5 (Included A/C) |

<u>Hostile Work Environment and Retaliation</u>

94. January 02, 2016 at 2345 hours (11:45 p.m.) Lieutenant Gabriel Healy tax number 931721. The 046 precinct midnight platoon commander, and a male Caucasian.

95. While I Police Officer Claude A. Staten was behind the command desk, the desk sergeant Joseph Doria said, "Hey Lou" (referring to Lieutenant Healy) "You should have did the polar bear swim." Lieutenant Healy replied, "No I'm not a swimmer, I'm a runner." I Police Officer Claude A. Staten stated to Sergeant Joseph Doria, "The Lieutenant does not have enough girth to do that swim", regarding to his body mass. As Lieutenant Healy is tall and very thin.

96. Lieutenant Healy responds to me, "Claude how do you know what my girth is", while he opens his legs and motions towards his genitals. As he laughs and said. "Got you, you have nothing to say now". I replied, "Really you want me to take it there."

97. I requested a command log page number as a command log entry should have been made regarding this conduct and statement. Which I found to be unprofessional, highly offensive, and not suitable in the workplace, particularly by a supervisor. Which I find, Lieutenant Gabriel Healy guilty of creating a hostile work environment, with sexually explicit gestures, and statements.

98. June 26, 2016 at 0750 hours (7:50 a.m.). As I, Police Officer Claude A. Staten, was signing out on the rollcall at the end of my midnight tour. Police Officer Dina Ramos, a Hispanic female, was assigned to the telephone switch board for the day tour 0705x1540 (7:05 a.m.-3:40 p.m.) and where the return rollcall is located.

99. While I was engaged in a conversation with Officer Ramos briefly. Lieutenant Gabriel Healy, who is not required to sign out on the return rollcall, approaches and said to Officer

Ramos in a loud voice, "Is he harassing you?" Referring to I Officer Staten. Officer Ramos

replied, "No we're just talking." Lieutenant Healy replied, "Oh" and walked off.

100.     Just minutes later I then went to the highway safety office on the second floor of

the 046 precinct. To speak to Police Officer Lynch, the highway safety officer, regarding

three traffic summons that I had written the day prior. As Police Officer Lynch had called

I Officer Staten on my cellphone, while I was still on patrol at 0729 hours (7:29 a.m.) on

June 26, 2016.

101.     As I was in the highway safety office with Police Officer Lynch with the door

closed, as it always is when the air conditioning is in service. The door is quickly opened

by Lieutenant Healy, and in a loud voice he said to Mrs. Police Officer Lynch, "Is he

harassing you?" Referring to I Officer Claude A. Staten.

102.     Mrs. Police Officer Lynch replied, "No, I requested he come up here to give me his

copy of the summons he had written so I can enter them in the system, because the copies

I have are not clear." Lieutenant Healy then replied, "Oh O.K. Listen Claude don't be up

here harassing her because she's a married woman."

103.     I Police Officer Claude A. Staten replied, "Yes, I am aware of that, but this visit is

just work related, regarding summons that I have written." Lieutenant Healy then asked

about the event regarding the summons, so I explained the facts. But the fact that Lieutenant

Healy made it a point to follow me throughout the precinct, and stalk me to see what female

employee I am speaking to, and repeatedly disrupting me is a clear case of job harassment

in the work place.

Harassment

104.    I the complaint own two houses in New York State, as mentioned in the EEOC

complaint made in July 2015. Which fully explains the particulars.

105.    I was out on sick report for a motorcycle accident which occurred on

September 07, 2015. On October 09, 2015 I was present at my primary residence, 176

Linden Avenue Middletown, New York in the confines of Orange County. On this date at

6:15 A.M. the police were sent to my home in Sullivan County located at 33 Haddock Road

Monticello, New York.

106.    The three police officers were wearing tactical gear, and caused alarm to my then

sixteen year old daughter. Upon opening the front door my daughter was questioned by the

man who was looking through the front door sidelight window. My daughter was asked

more than just general questions, but was instead interrogated by this police officer.

Without the permission of a parent, guardian, clergy, or other responsible adult present. As

there was no emergency exception present.

107.    The police officers, as a ruse, claimed they were looking for a fugitive. The officer

first asked if her parents were home, and when my daughter replied no, the questioning

continued. The officer asked my daughter the whereabouts of her parents. My daughter

replied that her mother was at work and her father was not here. The police officers

requested that my daughter call her mother at work, which she did comply. The police

officer took the phone and questioned my wife.

108.    The police officer remained present at my home for more than forty minutes.

During such time, the police officers asked my daughter if they were holding her up and

she replied, "Yes you are." As she and my two younger children had school. The police officer replied, "Well we won't be much longer."

109.     Regarding this incident I have reason to believe that the NYPD was involved in this incident. If this is the case, then this is beyond employment discrimination, as my family is also being attacked, as their rights are also being violated. I believe this was a failed attempt to find me outside of the resident counties while on sick report. I believe this also should be investigated, to ascertain, if the NYPD is in fact involved.

110.     The defendant states that the December 21, 2012 allegation, regarding my residency in Monticello New York, was investigated by the Personnel Bureau Investigations Unit, which substantiated the violation of the residency requirements, although the NYPD's Advocate's Office elected not to prosecute the charges.

111.     I the plaintiff dispute those charges completely, as the only substantiation to be found is that I in fact own both houses, for which only my family and I occupy. My wife and children are not held by the same department provisions that I am. And I have not violated any department guidelines or provisions. The Advocate's Office is not doing me a favor by not prosecuting, for there are no violations present.

<u>Retaliation</u>

112.     The Defendant's statement states that I the complainant reported sick on 13 different occasions from 2012 through 2014. I was designated chronic sick during that time period, which is wrong. I only went sick six times during that period and one sick was cancelled since I went to work. I was not chronic sick during this time period.

113.     Not until September 07, 2015 which was my fourth sick within a twelve month period. I was involved in a motorcycle accident, for which I sustained a serious injury, and

was removed from the scene by ambulance to the hospital for treatment. The worse of the injuries was a broken left ankle. Where I had the bones set at the hospital and had my left leg placed in a cast.

Exhibit A172 Hospital Report

114.     However, the exceptions to being chronic sick four times within a twelve month period are line of duty and hospitalization. The NYPD's department guidelines were not applied in regards to me as a bad faith effort to make me chronic sick.

Exhibit A173 Department Guidelines

115.     On November 23, 2015 I was returned to full duty status. While present at Medical District Four located in the 50 precinct Bronx, New York at about 9:15 a.m. I spoke to Lieutenant Hillian in person regarding consolidating my sick reports, as there was hospitalization with the last date I reported sick on September 07, 2015.

116.     Lieutenant Hillian refused to do so, as he previously stated during our phone conversation on November 09, 2015. His reason being because I was chronic sick July of 2004, July of 2002, and December of 1989. I argued, "What does that have to do with the situation now?" His answered "My commanding officer won't like that." Lieutenant Hillian further states, "Don't worry about it," as he wrongfully refused to correct the condition.

117.     I believe this to be a bad faith effort and an attack on me, as a form of retaliation against me for speaking out against the NYPD.

Exhibit A174

<u>Summary</u>

The P.B.A. and their delegates not only stood back and watched the abuse I the plaintiff have suffered at the hands of the City and their agents., but also took part in the attacks against I the plaintiff. In what is clearly perceived as employment discrimination. In addition the P.B.A. Union had repeatedly, refused to offer any assistance or help when requested by I the plaintiff, a victim of said abuse. The Union has failed to honor the contract between the Union and I the plaintiff, a longtime member of the union. For what I the plaintiff believe to be a bad faith effort against I the plaintiff because of my color and my race.

Fourth EEOC Complaint

For Paragraph 8.B

> Of the persons, in the same or similar situations as you, who has treated worse than you?

Of the persons in the same or similar situation as you, who had treated worse than you?

| B.Full Name | Race, sex, age, national origin, religion, or disability | Job Title |
|---|---|---|
| Cory Carr | African American, male | N.Y.P.D. Police Officer |

Police officer Cory Carr was assigned and placed in a shooting post, which is a dangerous location within the 046 precinct. Where a male was shot. Police officer Cory Carr was placed on that post two days in a row. The first day Cory Carr was assigned this dangerous post, he stated that he was in fear for his safety. So as a result he was sent to the NYPD's psychological services of the medical division, next day the Police officer Cory Carr was again assigned this very same shooting post, despite his fears and concerns for his safety. As a result Police officer Cory Carr was suspended for refusing to take this dangerous post. The weeks following Police officer Cory Carr's suspension, for refusing to take this dangerous post. I Police officer Claude A. Staten was repeatedly given this very same shooting post. I Police officer Claude A. Staten have been involved in two Police related shootings while assigned to the 046 precinct. In that I had to shoot a perpetrator in each department related shootings, as I fought to more than up hold the law, but was fighting for my life. However, I was not given any department recognition from the N.Y.P.D., for my job related shootings, or any special job assignments like my Caucasian counter parts Police officer Eugene Donnelly, former Police officer, but now retired Keneith Thompson, and former Police officer , but now detective Matthew Costello, have all been. Showing and proving just how dangerous the 046 precinct is, and what could, and has happened, time and time again. There is no crime, for an officer being in a fear for his life or safety, and certainly does not make him less than mentally sound. Police officer Cory Carr has every right to be afraid. Fear is not a violation of the N.Y.P.D.'s departments guide lines, although refusing to take his post was. As I Police Officer Claude A. Staten was given this very same post repeatedly. Immediately following Police officer Cory Carr's suspension, for refusing this post. For what I believe, was to set, I Claude A. Staten up for failure. Should I have refused this post, I too would have been suspended. Police Officer Cory Carr has been, like myself, punished excessively and harshly. Also though I Police officer Claude A. Staten have never been suspended. But who would want to suffer the fate of the former 046 precinct Anti-crime team members Aliro Pellerano and Andrew Dossi? Who were both shot and injured in the line of duty January 05, 2015. Proving just how dangerous the precinct we work in is. The powers that be, that being the supervisors and brass, who impose these harsh penalties, are not subjected to the same threats of danger, injury, or death. But I Police officer Claude A. Staten who the New York City Police department, has found it appropriate to repeatedly refuse to promote me, from no fewer than three promotional exams, for which I have passed, or recognize my acts of bravery in the two line of duty police shootings I have been involved in while assigned to the 046 precinct. But I am fit to stand on a foot post on a midnight tour on a shooting post, and noted dangerous location, were I too was afraid, for my safety. In the course of my career and assignment to the 046 precinct. I Police officer Claude A. Staten personally witnessed many

Caucasian Police officers refuse their assignments, and not because the assignments were dangerous, or out of fear. But for the simple fact that the assignment was not wanted. As I have made mention of in my previous complaint see Claude A. Staten V. The City of New York 14cv4307 ¶93-94.

January 17, 2000 day of the week Monday, Sergeant Frank Carregan conducted role call and assigned Police officer Gregory Manning, as 046 precinct cell attendant. Police Officer Gregory Manning, a Caucasian male, protested to Sergeant Frank Carregan, a Caucasian male, about his assignment, and had his assignment changed to patrol, and I Police officer Claude A. Staten, was given Police Officer Gregory Manning's original assignment as call attendant although I had more seniority than Police officer Gregory Manning. But there was never any talk or actions of suspending Gregory Manning, for refusing his post or assignment. Although Gregory Manning was suspended prior to this date, and was later to be suspended again after this date, but for misconduct and corruption. But the point to be made is how unfair and unequal the terms and conditions are within the N.Y.P.D., as a direct result of an employee's color and race.

See Exhibit 3L7

Paragraph 8.A

 Of the persons in the same or similar situation as you, who was treated same than you?

| A.Full Name | Race, sex, age, national origin, religion, or disability | Job Title |
|---|---|---|
| Cesar L. Gomez | Hispanic, male | Police Officer |

Description of Treatment

Failure to promote, Unequal Terms and Conditions of Employment, Race discrimination

 Police Officer Cesar L. Gomez assigned to the 046 precinct is currently on the N.Y.P.D. sergeant's list for the exam number 3539 given in 2013 with a list number of #176 and a score of 84.606. Police Officer Cesar L. Gomez a male Black Hispanic, was also previously on exam number 8564 list for the promotion, to the rank of N.Y.P.D. Sergeant. With the list number of 27 and a score of 91.700. But was not promoted from this exam list, as a result of his DWI arrest. Stephan Wheeler a male Caucasian also previously on exam number 8564 promotional list for the N.Y.P.D. rank of sergeant with a list number of 423, and a score of 79.28. But was in fact promoted from the exam list. Despite also being arrested for DWI, without any delay in his promotion to the rank of sergeant. Even though Stephen Wheeler did receive department changes for a missing property voucher, containing US currency in access of two thousand dollars. While being modified for his DWI arrest. I Police Officer Claude A. Staten a male black Hispanic was also on exam number 8564 promotional list for the rank of N.Y.P.D. Sergeant with a list number of 244 and, a score of 83.025. Although I Police Officer Claude A. Staten have never been arrested, modified, or suspended. Like Police Officer Cesar l. Gomez, I too, was not promoted from exam number 8564 promotional list, unlike Stephen Wheeler, for what I believe to be our color and race. Enclosed in this complaint, is a complete copy of the 2009 Sergeant's exam list number 8564. With Police Officer Cesar L. Gomez, I Police Officer Claude A. Staten, and former Police Officer, but now Sergeant Stephen Wheeler. Names have all been highlighted.

Paragraph 5.C

What happened to you that you believe was discriminatory?


Date: February 26, 2016        Action; Race Discrimination, Retaliation, Hostile Work Environment

Name and Title of Person(s) responsible: Sergeant Leone


I Police Officer Claude A. Staten was assigned to work a 2315x0750 tour (11:15 p.m.-7:50 a.m.). During role call conducted by Sergeant Regnier a female Caucasian. My assignment was station house security. Roll call was completed at 0030 hours (12:30 a.m.). At 0035 hours (12:35 a.m.). My post was changed by Sergeant Leone, who is the late tour 046 precinct Desk officer, spoke to me in a very nasty and unprofessional manner.  My new assignment was to respond to Bronx central booking to retrieve a prisoner, and remove the prisoner to the hospital. Sergeant Leone further states call the 046 precinct desk to advise which hospital I would respond to, I asked do I have a caged radio patrol car for the prisoner transport. Sergeant Leone refused to assign one, and instead instructed a radio patrol car without a partition to transport me to Bronx central booking and leave me there. The central booking desk sergeant had to call for an ambulance from Bronx central booking in order for myself and the prison to be transported to the hospital. 0115 hours (1:15 a.m.). Ems transported myself and the prisoner to the hospital. 0130 hours (1:30 a.m.)- Both the prisoner and I arrived at Montefiore hospital. I was never assigned relief at any time during the tour. At 0705 hours (7:05 a.m.) I called the 046 precinct desk and spoke to Sergeant Regnier advising her that the prisoner has been discharged from the hospital. 0820 hours (8:20 a.m.)- Both the prisoner and myself was picked up from Montefiore hospital by Police officer Samuel. 0830 hours (8:30 a.m.)- Both the prisoner and myself have arrived at the 046 precinct. During the transport Police officer Samuel explained to me just how rude and disrespectful Sergeant Leone was to him, and also like myself he too has been given poor and unfavorable assignments by sergeant Leone, and how he feels that sergeant Leone is a racist by his harsh treatment towards minority employee's Police officer Samuel being an Asian Indian dark skinned male.

February 27, 2016, 2345 hours (11:45 pm)-  while I Claude A. Staten was being transported to post by Police officer Dino Davilla. Officer Davilla explained how rude and disrespectful sergeant Leone was to him regarding a voucher he prepared February 26, 2016, and further stated that Sergeant Leone threw the voucher back at him because it was not prepared correctly, and spoke to him very disrespectfully. Dino also states he believes Sergeant Leone to be racist, as well, because of his conduct. Towards minority employee's. Every police officer who is in fact minority in one form or another, and assigned to the 046 precinct has explained to I Claude A. Staten just how unprofessional, disrespectful, and nasty that sergeant Leone has been to them. But I Claude A. Staten have never witnessed, or heard of any Caucasian Police officer's state, nor explain that Sergeant Leone has been disrespectful, unprofessional, or rude with them. Where I personally watch and observed, Sergeant Leone many times while his Tour since over lapped mine, and I Claude A. Staten can surely say the same. Giving me all reasons to believe that sergeant Leone, certainly has a problem with minority Police officers. In that both his conduct and actions indicate such.

Paragraph 8.C

Of the persons in the same or similar situation as you, who was treated better than you?

| C. Full Name | Race | Job Title |
|---|---|---|
| Eugene Donnelly | Caucasian Male | Police Officer |


Police officer Eugene Donnelly was formerly assigned to the 046 precinct. He was awarded a medal issued to him by both the Police Commissioner and the Mayor, at an award ceremony held at a Police Headquarters, for a Police related shooting, while Police Officer Eugene Donnelly was in fact off duty. I Police officer Claude A. Staten have been involved in two separate police related shootings while on duty, but unlike Eugene Donnelly, I Claude A. Staten received no department recognition, for what I feel to be both my color and my race. As I am black Hispanic, and have certainly been treated differently, and far less favorably than Police Officer Eugene Donnelly who is a male Caucasian. On May 21, 2016 at 0430 hours (4; 30 a.m.) while I police officer Claude A. Staten was preforming my regularly schedule tour, I did witness Police Officer Eugene Donnelly informed the desk officer, that he had to retrieve something from his department locker. On May 22, 2016 Police officer Eugene Donnelly was arrested again, for driving while intoxicated after striking three parked cars, and turning the vehicle he was driving on its side.

Paragraph 8.A

Of the persons in the same or similar situation as you, who had treated worse than you?

| A.Full Name | Race, sex, age, national origin, religion, or disability | Job Title |
| --- | --- | --- |
| Lucy Rosa | Hispanic, female, 51, catholic, 9/11 related illness | Detective |

Description of Treatment

Unequal Terms and conditions of Employment, Race discrimination, Sex discrimination.

Detective Lucy Rosa became sick due to illness directly related to 9/11/01 world trade center attack. As a result detective Lucy Rosa was on sick report for three years, due to her line of duty illness, and was forced to retire June 08, 2016 because of her long term sick status. But Detective Steven McDonald a male Caucasian, and who was also injured, in the line of duty, July 12, 1986. Which is approaching thirty years he has remained on sick report. With no mention of him being forced to retire, for what I believe to be his gender, color, and his race. But Detective Lucy Rosa has not been treated the same as Detective Steven McDonald, for what I believe to be Detective Lucy Rosa's gender and her race.

Paragraph 8.D

      Of the persons in the same or similar situation as you, who was treated better than you?

| D.Full Name | Race, sex, age, national origin, religion, or disability | Job Title |
| --- | --- | --- |
| Scott Monier | Caucasian Male | N.Y.P.D. Police Officer |

Description of Treatment

Unequal Terms and Conditions of Employment, given special assignment as a result of his relationship with Lieutenant Kristine Schelberger.

      Police Officer Scott Monier was assigned to the 046 precinct for his entire career until his marriage to former N.Y.P.D. Lieutenant Kristine Schelberger. Since her marriage to Police Officer Scott Monier she is now known as N.Y.P.D. Lieutenant Kristine Monier. Former Kristine Shelberger, was a sergeant in the N.Y.P.D. internal affairs Bureau, and in years 2008, 2009, and 2010 she did mount an ongoing attack against I Police officer Claude A. Staten. Issuing I Claude A. Staten a repeated number of departmental charges, which as a result, was used as a way of stopping my career advancement. For charges that were unwarranted, and other charges that were minor in nature, but I was punished severely. In or around 2013 then newly promoted Kristine Schelberger, was assigned to the 046 precinct on my tour, and as my Lieutenant and platoon commander. Where Kristine Schelberger continued her repeated bad faith acts against I Police Officer Claude A. Staten. Putting me in threat of unnecessary harm repeatedly, creating a hostile work environment. As a form of retaliation, and race discrimination. Shortly after Police Officer Scott Monier married Lieutenant Kristine Schelberger, he was transferred to the Chief of Department Oper Unit. As what I believed to be a form of nepotism, for his relationship with Lieutenant Kristine Schelberger.

Paragraph 5.B

What happened to you that you believe was discriminatory?


Date: February 26, 2016        Action; Hostile Work Environment

Name and Title of Person(s) responsible: Gabriel Healy


January 02, 2016 at 2345 hours (11:45 p.m.). Lieutenant Gabriel Healy tax number 931721. The 046 precinct midnight platoon commander, and a male Caucasian. While I Police Officer Claude A. Staten was behind the command desk, the desk sergeant Joseph Doria said "Hey Lou" (referring to Lieutenant Healy) "You should have did the polar bear swim." Lieutenant Healy replied, "No I'm not a swimmer, I'm a runner." I Police Officer Claude A. Staten stated to Sergeant Joseph Doria, "The Lieutenant does not have enough girth to do that swim", regarding to his body mass. As Lieutenant Healy is tall and very thin. Lieutenant Healy responds to me, "Claude how do you know what my girth is", while he opens his legs and motions towards his genitals. As he laughs and said. "Got you, you have nothing to say now". I replied, "Really you want me to take it there." I requested a command log page number as a command log entry should have been made regarding this conduct and statement. Which I found to be unprofessional, highly offensive, and not suitable in the workplace, particularly by a supervisor. Which I find, Lieutenant Gabriel Healy guilty of creating a hostile work environment, with sexually explicit gestures, and statements.

June 26, 2016 at 0750 hours (7:50 a.m.). As I, Police Officer Claude A. Staten, was signing out on the rollcall at the end of my midnight tour. Police Officer Dina Ramos, a Hispanic female, was assigned to the telephone switch board for the day tour 0705x1540 (7:05 a.m.- 3:40 p.m.) and where the return rollcall is located. While I was engaged in a conversation with Officer Ramos briefly. Lieutenant Gabriel Healy, who is not required to sign out on the return rollcall, approaches and said to Officer Ramos in a loud voice, "Is he harassing you?" Referring to I Officer Staten. Officer Ramos replied, "No we're just talking." Lieutenant Healy replied, "Oh" and walked off. Just minutes later I then went to the highway safety office on the second floor of the 046 precinct. To speak to Police Officer Lynch, the highway safety officer, regarding three traffic summons that I had written the day prior. As Police Officer Lynch had called I Officer Staten on my cellphone, while I was still on patrol at 0729 hours (7:29 a.m.) on June 26, 2016. As I was in the highway safety office with Police Officer Lynch with the door closed, as it always is when the air conditioning is in service. The door is quickly opened by Lieutenant Healy, and in a loud voice he said to Mrs. Police Officer Lynch, "Is he harassing you?" Referring to I Officer Claude A. Staten. Mrs. Police Officer Lynch replied, "No, I requested he come up here to give me his copy of the summons he had written so I can enter them in the system, because the copies I have are not clear." Lieutenant Healy then replied, "Oh O.K. Listen Claude don't be up here harassing her because she's a married woman." I Police Officer Claude A. Staten replied, "Yes, I am aware of that, but this visit is just work related, regarding summons that I have written." Lieutenant Healy then asked about the event regarding the summons, so I explained the facts. But the fact that Lieutenant Healy made it a point to follow me throughout the precinct, and stalk me to see what female employee I am speaking to, and repeatedly disrupting me is a clear case of job harassment in the work place.

Paragraph 8.B

Of the persons in the same or similar situation as you, who was treated better than you?

| D.Full Name | Race, sex, age, national origin, religion, or disability | Job Title |
|---|---|---|
| Cheryl Shea | Caucasian Female | N.Y.P.D. Sergeant |

Description of Treatment

Was promoted to the rank of Sergeant with a list number greater than I Claude A. Staten for the same exam taken, and was allowed to take the 2015 N.Y.P.D. exam, for the rank of Lieutenant, for which I too applied for but was not allowed to participate. Creating unequal terms and conditions of my employment. By failing to promote me to the rank of sergeant as a bad faith effort in addition.

Cheryl Shea was promoted from N.Y.P.D. Sergeant Exam number #1533 with a list number of 665. Which was more than 155 positions behind my list number of 510. On the same promotional exam list, for which I Claude A. Staten was never promoted from. For the second promotional exam list in a row, for the position of N.Y.P.D. rank of sergeant. But Cheryl Shea was promoted to the rank of N.Y.P.D. sergeant from the same promotional exam list despite having twenty years less job experience than I Claude A. Staten. In addition to being allowed to take the 2015 N.Y.P.D. Lieutenant Exam number 5535. Whereas I Claude A. Staten was not allowed to do so, although I too filled for the same promotional position, but was refused admission to the promotional exam site, and not entitled to take the same promotional exam. For what I find to be a bad faith effort to stop my career advancement. As act of both race and age discrimination, and retaliation against me.

Paragraph 5.D

What happened to you that you believe was discriminatory?

Date: February 26, 2016          Action; Race Discrimination, Retaliation, Hostile Work Environment

Name and Title of Person(s) responsible: Joseph Doria

Joseph Doria Tax number 941677. The 046 precinct midnight Sergeant, and I Claude A. Staten's squad Sergeant, and direct supervisor. Sergeant Joseph Doria is a male Caucasian. Through the month of January 2016, I Claude A. Staten was repeatedly assigned a fixed midnight foot post. Although I was full duty status, I was still recovering from a broken ankle of my left foot, for which I Claude A. Staten clearly stated to the platoon Commander Lieutenant Gabriel Healy, in the present of other midnight supervisors. I was able to walk and stand, but not for long periods of time, without causing discomfort and pain. At this time I was given other post, that I was expected to stand on foot, during the Late Tour, prior to the above listed date. Which Sergeant Michael Williams, an African American male, and late tour supervisor at the time, prevented when he was present. By supplying, I Police Officer Claude A. Staten with a vehicle to prevent me from having to stand for long periods of time. Proving that the issue here was not that vehicles were not available, but instead, the intentions of making me stand on foot repeatedly.

On January 28, 2016 I Police Officer Claude A. Staten was assigned a fixed midnight foot post at Tremont Avenue and Anthony Avenue, which was a shooting post, in the confines of the 046 precinct, and which is also considered a rookie officers post as well. I see this assignment as an attack on me because the roll call was adjusted in order to change my assignment to this post.

February 11, 2016 I was assigned to the stationhouse security as my assignment at roll call. At 0300 hours (3:00 a.m.) my post was changed to guard prisoners lodge in the precinct cells, by Sergeant Joseph Doria Tax number 941677, who was my squad Sergeant and direct supervisor. This is also an undesirable post as the officer must remain inside the cell block when prisoners are lodged therein. The conditions are dirty, offensively smelling, and the risk of contracting illness or infection is great as a result of the conditions listed, are the reasons why I find the above listed actions to be completed acts of desperate treatment within my work place.

Paragraph 8.A

Of the persons in the same or similar situation as you, who was treated better than you?

| D.Full Name | Race, sex, age, national origin, religion, or disability | Job Title |
|---|---|---|
| Joseph Doria | Caucasian Male | N.Y.P.D. Sergeant |

Description of Treatment

Was promoted to the rank of Sergeant with a list number greater than I Claude A. Staten for the same promotional exam taken.

Joseph Doria was promoted from N.Y.P.D. Sergeant Exam number #1533 with a list number 1617. Which was more than 1100 positions behind my list number of 510. On the same exam list, for which I Claude A. Staten was never promoted from. For the second promotional exam list in a row for the N.Y.P.D. rank of Sergeant. But Joseph Doria is assigned as my Squad Sergeant with less years alive than I Claude A. Staten have been on patrol. Making him far less qualified for the same position than myself. Also as of May of 2016 Joseph Doria has been given a position of Anti-crime supervisor to work in plain clothes which is a career opportunity and a beneficial position. And replaced the former Anti-crime Supervisor Sergeant Keith Bryant, a male African American, with more than 20 years seniority over Joseph Doria. To only be replaced with Sergeant Joseph Doria a male Caucasian, and Sergeant Keith Bryant was returned to patrol as a result. For the reasons I find to be both race and age discrimination.

Paragraph 5.E

What happened to you that you believe was discriminatory?

Date: February 26, 2016      Action; Race Discrimination, Retaliation,

Name and Title of Person(s) responsible: Lieutenant Hillian

Not until September 07, 2015 which was I Claude A. Staten fourth sick within a twelve month period. I was involved in a motorcycle accident, for which I sustained a serious injury, and was removed from the scene by ambulance to the hospital for treatment. The worse of the injuries was a broken left ankle. Where I had the bone set at the hospital and had my left leg placed in a cast. **Exhibit A172**.

However, the exceptions to being chronic sick four times within a twelve month period are line of duty and hospitalization, the NYPD's department guidelines were not applied in regards to me. As a bad faith effort to make me chronic sick.                **Exhibit A173 Department Guidelines**

On November 23, 2015 I was returned to full duty status. While present at Medical District Four located in the 50 precinct Bronx, New York. At about 9:15 A.M. I spoke to Lieutenant Hillian in person regarding consolidating my sick reports, as there was hospitalization with the last date I reported sick on September 07, 2015. Lieutenant Hillian refused to do so, as he previously stated during our phone conversation on November 09, 2015. His reason being because I was chronic sick July of 2004, July of 2002, and December of 1989. I argued, "What does that have to do with the situation now?" His answered "My commanding officer won't like that." Lieutenant Hillian further states, "Don't worry about it," as he wrongfully refused to correct the condition. I believe this to be a bad faith effort and an attack on me, as a form of retaliation against me for speaking out against the NYPD.                **Exhibit A174**

Paragraph 5.G

What happened to you that you believe was discriminatory?


Date: May 03, 2016          Action; Race Failure to take action, regarding the charges complained of, (Failure to promote, Unequal terms and conditions of employment, Retaliation, Hostile work environments, Harassment, Race discrimination, Age discrimination.)

Name and Title of Person(s) responsible: Mayor Bill DeBlasio